IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THREE KEYS, LTD.,<br><br>            Plaintiff,<br><br>     v.<br><br>SR UTILITY HOLDING CO., et al.,<br><br>            Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 06-0664 (JBS)<br><br>**OPINION** |

APPEARANCES:

John A. Guernsey, Esq.
Kevin Dooley Kent, Esq.
Mark Edward Seiberling, Esq.
CONRAD O'BRIEN GELLMAN & ROHN
1040 Kings Highway North
Suite 600
Cherry Hill, NJ 08034
     Attorneys for Plaintiff

Eric M. Wood, Esq.
Ronald Jay Shaffer, Esq.
Allison L. Kashon, Esq.
FOX ROTHSCHILD LLP
1301 Atlantic City, NJ 08401
     Attorneys for Defendants

**SIMANDLE**, District Judge:

This matter comes before the Court on the motion of

Defendants – SR Utility Holding Company, the Estate of Samuel

Rappaport, Wil Rappaport, Tracy Rappaport Scott, Mellon Bank,

Rita Rappaport, and Carol Codek – to dismiss this action pursuant

to Fed. R. Civ. P. 12(b)(1).  Defendants claim that this Court

lacks subject matter jurisdiction to hear this case under the

probate exception to federal jurisdiction and the Rooker-Feldman

doctrine.  See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)
and District of Columbia Court of Appeals v. Feldman, 460 U.S.
462 (1983).  Alternatively, Defendants move to dismiss this
action, presumably pursuant to Fed. R. Civ. P. 12(b)(6), on the
grounds that collateral estoppel and res judicata preclude the
relief Plaintiff is seeking.

**I.    BACKGROUND**

Plaintiff characterizes this case as an action by a minority
shareholder to remedy shareholder oppression, pursuant to its
ownership of shares of stock in Defendant SR Utility Holding
Company.  Defendants aver that this action is the attempt by the
former disgraced executor of Samuel Rappaport's Estate, Richard
Basciano, to retain his ill-gotten gains from the Estate in a
forum that he hopes will be more amenable to his claims than the
Pennsylvania courts have been.

According to the Complaint, Plaintiff Three Keys is a
Maryland corporation with its principal place of business in New
York and owns a 24% minority interest in SR Utility.  (Compl. ¶
1.)  Defendant SR Utility is a New Jersey corporation with its
principal place of business in Pennsylvania. (Compl. ¶ 2.)  SR
Utility owns the Atlantic City Sewerage Company, a New Jersey
corporation.  (Id.)  Defendants Wil Rappaport, Tracy Rappaport
Scott, and Mellon Bank are the administrators of the Estate of
Samuel Rappaport. (Compl. ¶ 3.)  Wil Rappaport is a Pennsylvania

resident and owns 12% of the SR Utility shares.  He is also a

beneficiary of the Estate. (Id.)  Defendant Tracy Rappaport Scott

is also a resident of Pennsylvania, owns 12% of the SR Utility

shares, and is a beneficiary of the Estate.  (Compl. ¶ 5.)

Defendant Mellon Bank is a Pennsylvania Corporation with its

principal place of business in Pennsylvania.  (Compl. ¶ 6.)

Defendant Rita Rappaport is a resident of Pennsylvania, a

beneficiary of the Estate, and the mother of Tracy and Wil.

(Compl. ¶ 7.)  Defendant Carl Cordek is a resident of

Pennsylvania, owns a 1% interest in SR Utility, and is Director

and Chairman of the Board of SR Utility.  (Compl. ¶ 8.)  Cordek

also serves as the controller of Estate's management company,

according to the Complaint.  (Id.)

Plaintiff claims that Defendants are unlawfully depriving

him of more than $900,000 in dividends by placing that money in

escrow.  (Compl. ¶ 39.)  Thus, Plaintiff claims the amount in

controversy exceeds $75,000, the parties are completely diverse,

and that this Court, therefore, has jurisdiction over the action

pursuant to 28 U.S.C. § 1332.  (Compl. ¶ 9.)

## II.   MOTION TO DISMISS FOR LACK OF JURISDICTION

### A.   12(b)(1) Standard

When deciding a motion to dismiss for lack of subject matter

jurisdiction, the Court may not assume the facts pled in the

complaint are true; rather the Court must look into the matter on

its own and determine whether it has jurisdiction.

> Because at issue in a factual 12(b)(1) motion
> is the trial court's jurisdiction – its very
> power to hear the case – there is substantial
> authority that the trial court is free to
> weigh the evidence and satisfy itself as to
> the existence of its power to hear the case.
> In short, no presumptive truthfulness
> attaches to plaintiff's allegations, and the
> existence of disputed material facts will not
> preclude the trial court from evaluating for
> itself the merits of jurisdictional claims.
> Moreover, the plaintiff will have the burden
> of proof that jurisdiction does in fact
> exist.

Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891

(3d Cir. 1977).   Thus, for purposes of this motion to dismiss

for lack of subject matter jurisdiction, the Court must determine

what facts are supported by the record.   The Court has

> more latitude as to modes of proof in the
> disposition of issues of jurisdictional
> fact[, see] Tanzymore v. Bethlehem Steel
> Corp., 457 F.2d 1320 (3d Cir. 1972); Nelson
> v. Keefer, 451 F.2d 289 (3d Cir. 1971)[, b]ut
> ... the record must clearly establish that
> after jurisdiction was challenged the
> plaintiff had an opportunity to present facts
> by affidavit or by deposition, or in an
> evidentiary hearing, in support of his
> jurisdictional contention[, e.] g., Groh v.
> Brooks, 421 F.2d 589, 594 (3d Cir. 1970);
> Shahmoon Industries, Inc. v. Imperato, 338
> F.2d 449 (3d Cir. 1964).

American Federation of Musicians v. Bonatz, 475 F.2d 433, 437 (3d

Cir. 1973).

The parties have presented the Court with extensive briefing

on this issue, including Plaintiff's Opposition and Sur-Reply.

Plaintiff has also supplied the Court with the Stock Purchase

Agreement, attached to the Complaint (Pl. Compl. Ex. A) and

Defendants have attached ten exhibits to their Motion to Dismiss.

Plaintiff has not requested a hearing but has presented the Court

with additional materials in aid of its arguments for

jurisdiction.  (Pl. Exs. A-F.)  In accord with Bonatz, the Court

will rely on the record the parties have created in determining

the jurisdictional issue.

> **B.    The Probate Exception**

The probate exception to federal court jurisdiction is a

judicially-created doctrine that restricts the power of the

federal courts to hear probate cases.  This doctrine has been

premised on the reasoning that

> the Judiciary Act of 1789 and its successors
> granted the federal courts equitable powers
> coextensive with those held by the English
> Chancery Court in 1789. See Judiciary Act of
> 1789, ch. 20, § 11, 1 Stat. 78; Markham, 326
> U.S. at 494, 66 S. Ct. 296; Canal-Louisiana,
> 215 U.S. at 43, 30 S. Ct. 10. Because probate
> matters in late eighteenth century England
> were assigned to the ecclesiastical court and
> not to the Chancery Court, the federal courts
> are without the power to probate a will or
> administer an estate.

Golden ex rel. Golden v. Golden, 382 F.3d 348, 357 (3d Cir.

2004).  Courts have also reasoned that

> the same result occurs where the complaint
> seeks legal relief.  The power of the federal
> courts to grant legal relief was limited by

> the Judiciary Act of 1789 to be coextensive
> with the English common-law courts. Like the
> Chancery Court, the common-law courts did not
> consider probate matters.

Id. at 357 n.9.

However, "the Supreme Court recently and unanimously reminded the lower courts in Marshall that the probate exception is 'narrow,' and should not be used as an excuse to decline to exercise jurisdiction over actions merely because they involve a 'probate related matter.'"  Abercrombie v. Andrew College, 438 F. Supp. 2d 243, 251 (S.D.N.Y. 2006).  The Supreme Court has recently held:

> [T]he probate exception reserves to state
> probate courts the probate or annulment of a
> will and the administration of a decedent's
> estate; it also precludes federal courts from
> endeavoring to dispose of property that is in
> the custody of a state probate court. But it
> does not bar federal courts from adjudicating
> matters outside those confines and otherwise
> within federal jurisdiction.

Marshall v. Marshall, 126 S. Ct. 1735, 1748 (2006).

After the Supreme Court's decision in Marshall and supplemental briefing from the parties, the issue before the Court is whether this is an action "endeavoring to dispose of property that is in the custody" of the Court of Common Please of Bucks County, Pennsylvania, Orphans' Court Division ("the Orphans' Court"), which is probating the Rappaport Estate, and is therefore barred by the probate exception to federal diversity

jurisdiction.[1]  Thus, the Court must determine whether the relief

Plaintiff is seeking in this action relates to any property in

the custody of the Pennsylvania court.

The Court looks to the Complaint to determine what property

is at issue in this action.  Plaintiff models this action as one

of minority shareholder oppression and asks this Court, in Counts

I, III[2], IV[3], to (1) declare that the transfer of SR Utility

stock to Three Keys was valid, (2) direct the release of

approximately $900,000 of Three Keys's SR Utility dividends that

the defendants, majority shareholders, have placed in an escrow

account, (3) enjoin the defendants from placing future Three Keys

SR Utility dividends in escrow, (4) appoint a receiver for SR

Utility, and (5) award Three Keys compensatory and punitive

---

[1]  Prior to Marshall the parties also argued whether the
Orphans' Court had exclusive jurisdiction over this matter under
Pennsylvania law.  Marshall apparently obviates the need to
address that argument, as the Supreme Court made clear that
federal law is the only proper source for determining federal
jurisdiction.  Marshall v. Marshall, 126 S. Ct. 1735, 1750 (2006)
("At issue here, however, is not the Texas Probate Court's
jurisdiction, but the federal courts' jurisdiction to entertain
Vickie's tortious interference claim. Under our federal system,
Texas cannot render its probate courts exclusively competent to
entertain a claim of that genre.")

[2]  Count III alleges breach of fiduciary duty.

[3]  Count IV alleges "Breach of Covenant of Good faith and
Fair Dealing."

damages for the allegedly oppressive conduct.[4]  It is clear that
Plaintiff asks the Court to exercise control over the escrow
account, the SR Utility shares transferred to Three Keys, and the
dividends those shares will produce.

The record presented to the Court does not prove that the
escrow account, the SR Utility shares transferred to Three Keys,
and the dividends are "property that is in the custody of a state
probate court."  Marshall, 126 S. Ct. at 1748.  This aspect of
the probate exception merely restates the general proposition
that "when one court is exercising *in rem* jurisdiction over a
*res*, a second court will not assume *in rem* jurisdiction over the
same *res*."  Id.  As discussed below, the probate court removed
Basciano and his paramour as the executors of the Estate for,
among other things, wrongfully transferring SR Utility shares
from the Estate to Basciano via Three Keys.  The court did not,
however, exercise control over the shares or other property at

---

[4]   Two additional counts, for damages and declaratory
relief, do not seek to dispose of property and therefore are not
relevant to this probate exception inquiry. In Count II,
Plaintiff seeks a declaratory judgment that the transfer was
valid, that Defendants have no right to Three Keys' shares, and
that Three Keys is entitled to the escrow account as well as to
future dividends.  In Count V, a civil conspiracy count, Three
Keys only seeks an award of compensatory and punitive damages.
These claims, however, are relevant to the preclusion discussion,
below.

issue here.[5]  Nor did the Court order the creation of the escrow

account; according to the Complaint – and there is no evidence to

the contrary – the parties voluntarily agreed to place the SR

Utility Shares in escrow for a brief period of time.  Thus,

Plaintiff is not "endeavoring to dispose of property that is in

the custody" of the Pennsylvania Orphan's Court.  The Court

recognizes that the probate exception to diversity jurisdiction

is "narrow," Marshall, 126 S. Ct. at 1744, and finds that it does

not deprive this Court of subject matter jurisdiction in this

case.

> ### C.    *Rooker-Feldman* Doctrine

Next, the Court must examine Defendants' claim that the

Court lacks jurisdiction under the Rooker-Feldman doctrine.

Although the matter is closely poised, the simple fact that Three

Keys was not a named party in the Orphans' Court adjudication is

conclusive.

> Whatever the impact of privity principles on
> preclusion rules, Rooker-Feldman is not
> simply preclusion by another name. The
> doctrine applies only in "limited
> circumstances," Exxon Mobil, supra, at 291,
> 125 S. Ct. 1517, where a party in effect
> seeks to take an appeal of an unfavorable
> state-court decision to a lower federal
> court. The Rooker-Feldman doctrine does not
> bar actions by nonparties to the earlier
> state-court judgment simply because, for
> purposes of preclusion law, they could be

---

[5]  The court's judgment, however, is dispositive of the
propriety of that transfer, as discussed below.

          considered in privity with a party to the
          judgment.

Lance v. Dennis, 126 S.Ct. 1198, 1202 (2006) (per curiam).

     Because all of Plaintiff's relief depends on this Court

finding, contrary to the Pennsylvania courts, that the transfer

of shares from the Estate to Three Keys was valid and arguably

this action asks this District Court to overturn the judgment of

a state court, it appears on first glance that the Rooker-Feldman

doctrine deprives this Court of jurisdiction.  As the Court of

Appeals for the Third Circuit explained,

> [u]nder the Rooker-Feldman doctrine, a
> district court is precluded from entertaining
> an action, that is, the federal court lacks
> subject matter jurisdiction, if the relief
> requested effectively would reverse a state
> court decision or void its ruling. Whiteford
> v. Reed, 155 F.3d 671, 674 (3d Cir. 1998)
> (citing FOCUS v. Allegheny County Court of
> Common Pleas, 75 F.3d 834, 840 (3d Cir.
> 1996)). As such, application of the
> Rooker-Feldman doctrine is necessarily
> limited to "cases brought by state-court
> losers complaining of injuries caused by
> state-court judgments rendered before the
> district court proceedings commenced and
> inviting district court review and rejection
> of those judgments." Exxon Mobil Corp. v.
> Saudi Basic Indus. Corp., 544 U.S. 280, 284,
> 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).
>
> In explaining the jurisdictional bar, this
> Court has described the Rooker-Feldman
> doctrine as precluding lower federal court
> jurisdiction over claims that were actually
> litigated or those "inextricably intertwined"
> with adjudication by a state court. Parkview
> Assoc. P'ship v. City of Lebanon, 225 F.3d
> 321, 325 (3d Cir.2000) We have further

> explained that "a federal action is
> inextricably intertwined with a state
> adjudication, and thus barred in federal
> court under <u>Feldman</u>, **'[w]here federal relief
> can only be predicated upon a conviction that
> the state court was wrong**.' " <u>Id.</u> (quoting
> <u>Centifanti v. Nix</u>, 865 F.2d 1422, 1430 (3d
> Cir. 1989) (quoting <u>Pennzoil Co. v. Texaco
> Inc.</u>, 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L.
> Ed. 2d 1 (1987) (Marshall, J., concurring))).
> <u>See</u> <u>also</u> <u>Exxon Mobil</u>, 544 U.S. at 293, 125 S.
> Ct. 1517 ("In parallel litigation, a federal
> court may be bound to recognize the claim-
> and issue-preclusive effects of a state-court
> judgment," but the federal court is divested
> of jurisdiction under <u>Rooker-Feldman</u> only
> where it is asked to redress injuries caused
> by an unfavorable state-court judgment.).
> Importantly, if a plaintiff's claim in
> federal court is inextricably intertwined
> with a previous state court adjudication, the
> district court lacks jurisdiction over the
> claim even if it was not raised in the state
> court. <u>Id.</u> at 327, 125 S. Ct. 1517.

<u>Taliaferro v. Darby Tp. Zoning Bd.</u>, 458 F.3d 181, 192-93 (3d Cir.

2006) (emphasis added).  "[A] party's recourse for an adverse

decision in state court is an appeal to the appropriate state

appellate court, and ultimately to the [United States] Supreme

Court under § 1257, not a separate action in federal court."

<u>Parkview Ass'n P'ship</u>, 225 F.3d at 324.

Pursuant to litigation to remove Richard Basciano and Lois

Palmer as Executors of the Estate of Samuel Rappaport, the

Orphans' Court made several findings of fact:

> 61.  On March 31, 1997, Richard Basciano, as
>      buyer, purchased for his children 24% of
>      the outstanding shares of SR Utility
>      holding Company, a company owned by

Samuel Rappaport before his death and
which is now owned by the Estate.

62.   SR Utility owns the Atlantic City Sewer
      Company.

63.   Richard Basciano, as executor, set the
      price and terms for the sale of the
      stock.

      [...]

71.   Richard Basciano did not seek or obtain
      court approval to acquire on behalf of
      his children a 24% interest in SR
      Utility from the Estate.
      [...]

96.   Richard Basciano in total disregard of
      his fiduciary obligations as Executor
      has treated the property of the Estate
      as if it were his own personal property.

97.   Richard Basciano has personally profited
      from his position as Executor.

98.   In addition to his pattern of self-
      dealing without Court approval, Richard
      Basciano's actions in converting
      $220,000 of monies owed to the Estate
      requires his immediate removal as
      Executor.

In re Estate of Samuel Rappaport, No. 9400547, slip op. (Pa. O.C.

Aug. 23, 2002)(Def. Ex. A.)  The Court also determined that the

transfer of the SR Utility stock to Three Keys was contrary to

Pennsylvania law:

      Basciano engaged in a series of self-dealing
      transactions where he or family and friends
      received ownership interests in assets of the
      estate.  Basciano never sought or obtained
      court approval of these transactions as
      required by 20 Pa.C.S.A. §3356 . . . The Will
      of Samuel Rappaport did not authorize the

> Executors to engage in self-dealing without
> obtaining Court approval pursuant to 20
> Pa.C.S.A. §3356 .

These acts, including the transfer of the shares at issue in this litigation, constituted a breach of Basciano's fiduciary duty. Further, the Court found, "Richard Basciano and Lois Palmer have wasted and mismanaged the assets of the Estate."

Not only are the issues in this case "inextricably intertwined" with the proceedings in the state court, but relief in this action could "only be predicated upon a conviction that the state court was wrong." Parkview Associates P'ship, 225 F.3d at 325. Prior to Lance, the Court would lack jurisdiction to hear this action by Three Keys, seeking to enforce an agreement the Pennsylvania court has ruled to be unlawful.

However, as all parties acknowledge, Three Keys was not the actual party in the Orphans' Court litigation, Basciano was. Defendants argue that this is a distinction without a difference; although technically Three Keys has not been joined in the Orphans' Court litigation, the individuals involved and the sale ruled upon are the same. As Basciano admitted in his briefing to the Orphans' Court, these shares were placed in "an entity affiliated with Basciano's children." (Def. Ex. G at 2299a). The Stock Purchase Agreement Plaintiff attached to the Complaint, dated March 31, 1997, shows that this "entity" was Three Keys, the Plaintiff in this action, and that the ownership interest

13

Plaintiff is attempting to validate here is the very one ruled
illegal by the Orphans' Court.  (Pl. Compl. Ex. A at 1-2, 4, 9-
11.)

Although there may be some "circumstances, however limited,
in which Rooker-Feldman may be applied against a party not named
in an earlier state proceeding- e.g., where an estate takes a de
facto appeal in a district court of an earlier state decision
involving the decedent," Lance, 126 S. Ct. at 1202 n.2, we are
wary of extending Rooker-Feldman to this case on the ground that
a corporation or partnership can only act through its principals,
as Defendants argue we should.  The Supreme Court has "warned
that the lower courts have at times extended Rooker-Feldman 'far
beyond the contours of the Rooker and Feldman cases, overriding
Congress' conferral of federal-court jurisdiction concurrent with
jurisdiction exercised by state courts, and superseding the
ordinary application of preclusion law pursuant to 28 U.S.C. §
1738.' [Exxon Mobil v. Saudi Basic Indus. Corp.,] 544 U.S. [280],
at 283, 125 S. Ct. 1517.  Rooker-Feldman, [the Court] explained,
is a narrow doctrine . . . ."  Lance, 126 S.Ct. at 1201.
Accordingly, this Court declines to dismiss the Complaint as
barred by the Rooker-Feldman doctrine.

**III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

  **A.   12(b)(6) Standard and Collateral Estoppel**

A motion to dismiss on the grounds of collateral estoppel or

res judicata is properly considered as a motion to dismiss for

failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Rycoline Prod. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir.

1997).   In considering a Rule 12(b)(6) motion, all well-pleaded

allegations of fact and reasonable inferences that may be drawn

from them are accepted as true in order to determine whether

"under any reasonable reading of the pleadings, the plaintiff may

be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.

1996).   However, "a court may [also] consider an undisputedly

authentic document . . . if the plaintiff's claims are based on

the document."   Pension Ben. Guar. Corp. v. White Consol.

Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)

**B.   Collateral Estoppel Bars this Action**

It is obvious from the Complaint and the decision of the

Pennsylvania Orphans' Court that ordinary rules of collateral

estoppel bar this action.

> Issue preclusion, also known as collateral
> estoppel, bars relitigation of issues
> adjudicated in a prior action. See Bradley v.
> Pittsburgh Bd. of Educ., 913 F.2d 1064, 1074
> (3d Cir. 1990). By contrast, claim
> preclusion, with which it is often confused,
> "gives dispositive effect to a prior judgment
> if the particular issue, albeit not litigated
> in the prior action, could have been raised."
> Id. at 1070.

Swineford v. Snyder County Pa., 15 F.3d 1258, 1266 (3d Cir.

1994).   "It is now settled that a federal court must give to a

15

state-court judgment the same preclusive effect as would be given
that judgment under the law of the State in which the judgment
was rendered."  Migra v. Warren City School Dist. Bd. of Educ.,
465 U.S. 75, 80-81 (1984); see also 28 U.S.C. § 1738 (full faith
and credit statute).

In this case, Defendants argue that the decision of the
Pennsylvania Orphans' court, finding the facts outlined above and
deciding that the transfer of SR Utility shares to Basciano was
contrary to law, precludes this action.  Under Pennsylvania law,
a court may apply collateral estoppel to an issue if the issue
decided in the prior adjudication was identical with the one
presented in the later action; there was a final judgment on the
merits; and the party against whom the claim is asserted was a
party to the prior adjudication who had full and fair opportunity
to litigate the issue then in question, or is in privity with
such a party.  Odgers v. Com., Unemployment Compensation Bd. of
Review, 514 Pa. 378, 390 n.13 (1987).[6]  Applying this standard

---

[6] Other Pennsylvania Supreme Court formulations of this
rule, if read literally, seem to require that the party to be
precluded, and not just his privy, must have had the opportunity
to litigate. Safeguard Mut. Ins. Co. v. Williams, 463 Pa. 567,
574 (1975) ("a plea of collateral estoppel is valid if, 1) the
issue decided in the prior adjudication was identical with the
one presented in the later action, 2) there was a final judgment
on the merits, 3) the party against whom the plea is asserted was
a party or in privity with a party to the prior adjudication, and
4) the party against whom it is asserted has had a full and fair
opportunity to litigate the issue in question in a prior
action.")  This additional requirement would seem to frustrate
the purpose of determining privity.  Regardless, in this case it

16

to the Complaint and the court decisions, the Court finds that it

is appropriate to apply collateral estoppel to bar this action.

    After examining the Complaint, the decision of the

Pennsylvania Orphans' Court, and the stock sale agreement that

Plaintiff attached to the Complaint, the Court is convinced that

this case calls for the application of collateral estoppel.

First, there are several issues decided in the prior action that

would preclude this action.  Most simply, the Orphans' Court

decided that Basciano's sale of shares to Three Keys was not

legal.  See, supra, slip op. at 11-12.  Second, this was a final

decision on the merits.  Indeed, the decision was affirmed by

Pennsylvania's Appellate and Supreme Courts, after Basciano

claimed the trial court behaved improperly.  Third, although

Three Keys was not a party to the prior adjudication, the company

is clearly in privity with Basciano such that it is proper to

apply collateral estoppel to Three Keys in this action.  In the

Complaint, Three Keys refers to and attaches the Basciano

agreement at issue in that prior litigation.  Fourth, there is no

doubt that Basciano and Three Keys had full and fair

opportunities to litigate the validity of the stock sale.

_____

is clear that Three Keys also had an opportunity to fully and
fairly litigate the prior action.  First, Three Keys has made no
argument to the contrary and, second, the Defendants are
currently attempting to add Three Keys as a party to the Orphans'
Court litigation, which Three Keys is resisting.  (Pl.'s Br. at
10; Order of E.D. Pa. remanding case to state court at Pl's Ex.
J.)

Basciano's privies cannot seek a second bite at the apple here merely because they disagree with the state court decisions.

Without being able to show that the stock sale was valid, Plaintiff has stated no claim on which relief may be granted and the motion to dismiss must be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

**IV.   CONCLUSION**

Because Three Keys's success in this action depends on this Court reversing a decision on a precluded issue, it is proper to grant the motion to dismiss.[7]  The Court will deny Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), but grant the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The accompanying Order will be entered.


**December 8, 2006**                          **s/ Jerome B. Simandle**
Date                                          Jerome B. Simandle
                                              U.S. District Judge

---

    [7] The Court will not address the arguments regarding abstention.  Having found that collateral estoppel precludes relitigation of the validity of the stock sale, no other finding is necessary.